We only have one case up today, and the clerk can call that case. 19-1025 Austin Highlands Development Co. v. Midwest Insurance Agency, Inc. Thank you. I'd like the parties who have been argued to step up for a minute. As you can see, Justice Reyes is not here. He had a conflict. He will listen to the tape. The device in front of you is not an amplifier. It just records your voices, so please keep your voice up loudly. And we're going to give both sides 15 minutes, and if the appellant wants to reserve some of their time, you certainly can. All right, and when you... Just tell us your names. I'm sorry. My name is Richard Jones. I represent Austin Highlands Development Co. All right, and counsel. Jessica Burton, and on behalf of Midwest. All right, thank you. Thank you. Thank you. May it please the Court. Counsel. This case involves the issue of the liability of an insurance broker for failure to procure insurance policy in accordance with the directions of the insured. Austin Highlands Development Company owns several apartment complexes in the southwest suburbs. I hate to interrupt you, but I promise you we've read the facts. We know the facts in the case. It really is the legal issue, the issues that you need to address, because we have the facts. Okay. Your Honor, in this case, Midwest Insurance Company, which had a prior relationship with Austin Highlands, was asked to procure all risk insurance coverage for Austin Highlands. Midwest Insurance Company shopped the market and produced the policy issued by AIG. The AIG policy was produced by RT Specialty Group, which was the insurance producer for AIG, forwarded to Midwest Insurance Agency, and delivered to Austin Highlands. Mr. Jones, is it a crux of your argument that Midwest is a broker rather than a producer, so therefore the statute doesn't apply to them? Am I oversimplifying? That's the principal distinction that I'm trying to make, Your Honor. And so if we could just cut to the chase here, that statute has a pretty broad definition. So why was the court willing to find that the producer definition applied to Midwest? Okay. If I may answer the question by referring to the crop decision, then, Your Honor, while we were – two weeks after we filed our lawsuit in this case, the Supreme Court announced its decision in American Family Insurance v. Crop. In that case, Crop asked Varga to procure an insurance policy which would cover all risks. Varga was a captive agent of American Family Insurance Company. Varga produced the policy. The policy did not include all risks, and ultimately Varga was sued for defamation and invasion of privacy – I'm sorry, Crop was sued for defamation and invasion of privacy, and American Family Insurance denied coverage of the claim. Attack action was filed, and ultimately the case ended up going to the Supreme Court. The Supreme Court analyzed the case based upon the fact that, in that case, Varga was the captive agent of American Family Insurance. They looked to the captive agent of the company basically as an agent of the company, and they analyzed the case from the perspective that a captive agent of the company does not owe a duty to the insurer. They owe their duty to the company. So when a person walks into an American Family office, they know that that's an American Family agent. They're issuing an American Family policy, and that that agent's obligation primarily is to the company. And therefore, it's virtually caveat emptor when you walk into an American Family state farm, all-state office. So their fiduciary responsibility is always going to be to the insurer instead of the insurer? Correct. Okay. The distinction is that, in our case, we hired Midwest Insurance Agency, which is a broker, and sells itself as a company representing the insurers. In the case of American Family, Varga could only sell them an American Family policy. In our case, Midwest Insurance was asked to shop the market to provide the best possible coverage for the nature of our business. So if they were found to be a broker rather than a producer, what would the statute of limitations be? Well, that's an open issue. I think the statute of limitations would be two years, but the important factor is the accrual date of the cause of action. And so we would have to find three things. One is that they were a broker. Two, that even though they bought the policy in 2015, that somehow they didn't know of the defect in the insurance until sometime that gave them within the two years of 2018, rather than the accrual date being the date you bought the policy. Correct. In our case, the accrual date would be the date that we knew or reasonably should have known that there was a defect in coverage. But why wouldn't that accrual date be on the date that you buy the policy? It's laid out right in the policy what's covered there. Well, the policy was issued by the company, produced through Midwest Insurance, and my client had the expectation that they would procure an insurance policy which included all risks. But a violation of the Landlord-Tenant Act, how are you going to insure against violations of ordinances? There is coverage for that, all risk insurance coverage. My client has that coverage right now. It's available in the market, and it was available in the market at that time. But it could always be exempted, just like criminal actions can be exempted from coverage. Even on all coverage possibilities, you can always exempt certain actions that an insured takes, can't you? Yes. So isn't it up to the insured to look through that policy and determine exactly what their liabilities would be? Well, Your Honor, I think that, respectfully, the application of this caveat emptor principle to the insurance industry, I think that creates an illusory concept in terms of insurance coverage. The policies have multiple exclusions. You buy an insurance policy, your roof collapses on your house, and the company says, well, we've got an exclusion for wear and tear. And then the drain tile backs up in your crawl space, and you say, well, that's gradual and imperceptible. All of these things are included in a policy. But the policy that was sold to the plaintiff in this case specifically exempted these types of actions, did they not? Well, the policy that was issued by AIG included only personal injury and property damage. That policy should have included all risks. And if we had walked into the AIG office and said we want all risk insurance, AIG is the company, or even if it was an AIG agent, that that agent would have a responsibility only to the company. My client hired Midwest Insurance for the purpose of procuring insurance coverage for its apartment complexes. The best possible coverage that they could have so that it would cover all potential claims in connection with the operation of the apartment complex. But, Mr. Johns, my issue is, yes, I understand that's what they wanted. They wanted a blanket coverage that they wouldn't be out of pocket no matter what. But they didn't get that. And they didn't get that in 2015. So how is that now Midwest's problem when they didn't get the coverage they asked for, they didn't read through the policy to see that they didn't have that coverage, and three years later they filed suit? Well, because, Your Honor, my client relied upon Midwest Insurance as its agent to procure insurance coverage for its business. Midwest Insurance had a past relationship with Austin Highlands. And their prior policies all have this blanket coverage? I don't know the answer to that, but I do know that my client now has coverage which was available in the market at the time that this policy was issued, and this coverage would have covered the claim that was asserted by the plaintiffs in the class action. Okay. Can I ask you about the accrual date? Is there a definition in the statute or in the case law that defines when an accrual date could be? Not in the statute, but my understanding is that commonly the accrual date is the date upon which the insured knows or ought to know that he has a claim. Okay. Has that been defined? Pardon me? This temporal component of knew or should have known, has that been defined? Is there a case that supports you saying that the insurance should have, the accrual date should have been when they found out that they weren't covered for this? Is there a case that supports your position? Not that I'm aware of, Your Honor. The cases I've been dealing with have been the Kropp decision and the Scheperdes case. Both of those cases involve captive agents. They don't involve insurance brokers. But I will say that in the Kropp decision, the Supreme Court made particular note of the fact that Varga was a captive agent of the company. And they applied this concept of a tort arising out of a contract to borrow contract law concepts of accrual of causes of action. That's basically a contract law concept. In the area of tort law, normally the cause of action, the statute of limitations, would start to run on the date of the event. You get hit by a car, the statute of limitations for suing the other driver starts to run on the date that you were hit. You claim that he was negligent. In the case of insurance coverage, the date you know or ought to know that you have a claim is the date when you learn that there was negligence on the part of the other party. In this case, in the case of Austin Highlands, we didn't know that there was a claim until we found out that we didn't have coverage for the claim that was asserted. Now, we had the expectation that Midwest Insurance, which we paid a premium to to place this coverage, would provide the coverage that we expected in connection with the operation of our business. And one of those possible events would be being sued by a tenant. And that coverage was available, but it wasn't provided by Midwest Insurance. And because they didn't provide it, I believe that they were negligent in failing to procure the proper insurance coverage. We didn't know it until the time that we were sued. And so to apply a retroactive commencement date for the statute of limitations to a date before we had any reason to know that we had a claim, I think in the case especially of an insurance broker who's hired by the insured to represent him would be unreasonable. I know Your Honor has a limited amount of time. I'm not going to waste the Court's time by going through. You're the only case to me, so we're not really that concerned. I don't think you've addressed what Cropp says completely. And I can't think of the other scoparities. It seems to me reading it, and I certainly can be wrong and I'm going to read it again, but it seems to me that there was more of a broader sweep, including brokers and agents, in the decision that they were both producers of insurance and that rather than looking at the breach as a tort, they're looking, especially in Cropp's, they're looking at it as a contract. And the breach of contract occurs under the case law cited in here in Cropp as the date that you get your contract. And that's how in this particular case, not because the person was a captive agent, but because they look at it as a breach of contract that occurs at the moment you get the contract and it doesn't give you what you're asking for. And that's why I think it's important to look at it as a breach of contract.  It's a breach of contract. And they are requiring the two people who contract to read the contract. Your Honor, I understand. I understand why you would, you know, look at it from that perspective, but I would respectfully submit that to analyze an insurance contract solely as a contract and to impute a commencement date of the date of the contract, when you're talking about the liability that arises from an event that isn't even contemplated on the date of the contract is unreasonable. I don't think that a person who spends money to hire a broker and pays a special premium to retain that broker to procure insurance coverage should be required in addition to consider every possible event that might occur during the policy period and ascertain by reading the policy whether that policy would cover those events. That's what my client hired Midwest Insurance Agency to do. They're supposed to be experts. My client operates and owns apartment complexes. It's not an insurance expert. And if we accept the universal application of the crop decision, every homeowner is going to have to go out and hire a lawyer to read their policy, and then they're going to have to decide, okay, well, my roof might collapse in six months. Am I going to be covered? There might be a seepage of water into my basement wall. Will that be covered? People, when they buy insurance, have the expectation because of the way that it's advertised, you're in good hands. They're going to protect you. Well, all of a sudden, when you have a claim, those hands separate, and you've got the insurance laying on the floor. And I think that people have a right to expect, especially when they hire a broker to place insurance coverage for them, that that broker will exercise due care and place coverage that they specifically request. Now, we allege in our complaint that we asked for all-risk insurance coverage, that all-risk insurance coverage would have covered this claim. In this case, Midwest Insurance did not place the coverage that we asked for. They placed coverage that only covered personal injury and property damage, and as a result, we had to defend this class action. So unlike the Scopertis case and the Kropp case, we're not dealing with a captive agent. We didn't walk into an American family dealer, an American family office, and ask for them to produce coverage. We hired a broker that we had a past relationship with, that we expected would exercise due care in placing the coverage that we requested, and they failed to place that coverage. Did I respond to your question, Your Honor? You absolutely did. I'm just reading these cases. Even if I'll say for the sake of argument, I agree it certainly puts the consumer in a terrible position. But if the cases say what they say, it sounds like a legislative action. Well, I know. I've spent a lot of time thinking about this Kropp case and how I distinguish it. You can imagine my position, that two weeks after I file my lawsuit, the Supreme Court comes down with this case. I guess all I can say, Your Honor, is that there's a material distinction between the facts in Kropp and the facts in our case, and that distinction largely arises from the relationships of the parties. In Kropp, you had Kropp, Berger, an American family. Oh, I understand. I can't remember what case it is. That's why I'm sitting here looking, and I'm tired. But it seemed to me in reading the cases, and I read almost all the cases in both of your briefs because I wasn't familiar with this area, it seems like the court, along with the statutes, are getting rid of fiduciary responsibility. That's what it sounds like to me, which is certainly not consumer-friendly, but it certainly sounds like what has occurred. Well, I think it's dangerous for us to go back to the 19th century concept of caveat emptor. That seems to be – I don't like caveat emptor, too. Well, I mean, basically it just – it does seem that we're talking about caveat emptor, and no matter who you are, whether you're an attorney, a layman in the business of owning apartment complexes, it doesn't matter who you are. If we read the Kropp decision and we make it universally applicable, that you've got to defend yourself, and that all the advertising that we hear on television about how insurance companies have your interests at heart when it comes to processing a claim, that's no longer the case. So I – unless the Court has any additional questions for me, I will rest at this time. Thank you, counsel. Thank you very much, Ron. Good morning, Your Honors. May it please the Court? Counsel. I can certainly be sympathetic to plaintiffs' position and plaintiffs' counsel's position. A little bit louder, Casella. Sure. I mean, until we get here. I can certainly be sympathetic to their position in that the Kropp case came down two weeks after they did  But as Your Honor pointed out, the Kropp case is not a fair case. As Your Honor pointed out, this is really – that's an issue for the General Assembly. And as Your Honor pointed out, the case law is very clear on this situation. The statute is very clear on this situation. This involves the interpretation and the interplay between two statutes, the Insurance Producers Act and the Insurance Placement Liability Act. Midwest is an insurance producer under the Placement Act. As you both have pointed out, that's a broad definition that has come up. And that was decided in the Skapertus case in 2015 and was actually specifically pled by counsel in the complaint that even as a broker, Midwest is an insurance producer under the Act. So he's kind of trying to backtrack now to say, oh, well, they're not actually an insurance producer. That was specifically addressed in Skapertus. And counsel tries to distinguish here in Kropp and Skapertus the issue of captive agent versus broker. But, again, that's not relevant to the situation. What is relevant is are you an insurance producer? And both of those entities fall within the definition of an insurance producer. The issue in Skapertus, while it was a captive agent, the situation involved the applicability of the Placement Liability Act to a captive agent. Prior to the passage of that Act, counsel is correct that the duty owed by a broker went to the insured and the duty owed by a captive agent went to the insurance company. That was, in effect, eliminated. And the plaintiffs in Skapertus tried to say that, no, it really only or it applied to everybody. It did apply to a captive agent. It did apply to a broker. And the defendants in that case came back and said, no, no, no, it only applies to brokers. It was agreed among the parties, among the court, amongst everybody, that an insurance producer already included a broker. The issue is whether it's broadened to include a captive agent. So following counsel's line of argument, we are a broker. We were already, even before Skapertus, included in the definition of an insurance producer. Skapertus did nothing to change that. It only broadened the definition or clarified the definition to include a captive agent. And the court specifically states in Skapertus, it adopted the definition of insurance producer in the insurance code and specifically said it is a broad definition that includes both captive agents and insurance brokers. Counsel may not like the way that this applies to his case. And, again, I can sympathize with that, but the fact of the matter is that this is a Supreme Court decision that specifically addresses that issue. So moving on with the fact that this clearly, Midwest, is an insurance producer, then you go to the next act as to when that cause of action accrues. And, again, I can sympathize with counsel and how this puts the consumer in a certain situation. However, that is not an issue in front of you right now. We have Supreme Court decisions that are directly on point that state cause of actions against insurance producers accrue upon delivery of the policy. And as Your Honor talked about, it is when they knew or should have known. They should have known when they got the policy because they should have read the policy. And the Crop Court does carve out a very minor, narrow exception for situations where perhaps there is an instance where an insured may not understand how that is. And so having to hire lawyers every time you get an insurance policy is not really appropriate. In this situation, and I want to point out that in Crop, it was a homeowner. In this situation, they're a sophisticated real estate entity. They can read their policy and see that it says it's covered for personal injury and property damage instead of all risk. So you knew or should have known that the policy was not correct at the moment that it was delivered to you. So in this situation, the policy was delivered and effective on November 25, 2015. That is when the cause of action accrued because they are an insurance producer. The cause of action then expired. The statute of limitations ran two years later on December 25, 2017. They didn't file suit until October 2018. So it's very clear-cut when you look at the definitions as propounded in SCAPITAS and the accrual date as propounded in Crop. Counsel also in their briefs has tried to indicate that there was a potential fiduciary duty here, and that kind of goes to his lack of fairness argument. Again, sympathetic to it, but as the court pointed out, the courts have eliminated the fiduciary duty. They've eliminated it to insurance producers except in a narrow set of circumstances basically involving stealing money, but that's not alleged here. So there was no fiduciary duty. Whether it's a broker, whether it's a captive agent, whether it's an insurance agent, there's no fiduciary duty owed. And Crop specifically stated, therefore, you must read your policy and you knew or should have known that the policy was defective upon delivery. Your Honor, do you have any questions? I'm happy to answer them. No, I don't think so. No? Okay. Thank you, Your Honors. I would only add, Your Honor, that when you look at the cases that have been decided, the SCAPITAS case, which was relied upon by counsel in her brief, the Supreme Court in that case remanded the case to the trial court for determination as to whether the insurance agent in that case, Lesseris, exercised ordinary care. Now, as of the date of the SCAPITAS decision, the Insurance Producers Act had been effective for many years, yet the Supreme Court didn't even mention that case, that statute, yet, and remanded the case to the trial court. So we have two divergent Supreme Court opinions, one the Crop case and the other the SCAPITAS case. So... I can't remember the facts of the, I can't say it, Spicarnas case? SCAPITAS, I think. But was there a statute of limitations issue in it? In the SCAPITAS case, the agent was asked to place coverage including the insured's girlfriend and minor child, and they were injured in an automobile accident, and the question was whether the agent was negligent by failing to include the girlfriend and her minor child. But I'm saying, but there was not a statute of limitations issue in that case. That was not raised, but the statute was, had been long effective before that. No, I'm saying, but had the two years passed, maybe the statute wasn't addressed. The two-year statute of limitations set forth in the Insurance Producers Act was effective as of that date. It wasn't raised in, by, apparently by any of the parties. But it had been long effective. That statute was enacted in the 1990s, and it was long effective before the SCAPITAS case. My question is, from the time the father got the contract, or the boyfriend got the contract until the suit was filed, had two years passed? Three years in SCAPITAS. So under SCAPITAS, the accrual date, if they had applied the contract accrual date, as the Supreme Court did in CROP, that cause of action would have been barred, and the dismissal of the lawsuit would have been affirmed by the Supreme Court, whereas in SCAPITAS, the Supreme Court remanded the case to the trial court. They reversed the dismissal of the lawsuit and remanded the case to the trial court for further proceedings to determine whether Lesser has exercised ordinary care. So we have two divergent opinions. And the CROP decision is a later opinion, and I acknowledge that the CROP case did raise specifically the issue of when the cause of action accrued. But I would respectfully submit that the accrual date is not part of the statute. The accrual date is imputed by the Supreme Court's decision in CROP. And it was imputed by the Supreme Court's decision in CROP because, in that case, Varga was a captive agent. And I respectfully submit that if the Supreme Court was confronted with the same facts as existed in this case, where it was a broker who was hired by the insured and not a captive agent of the company, that the result would or should have been different. Thank you very much. Thank you. All right. For the parties, thank you very much. We will take the case under advice that we are. Thank you for your time. Thank you, counsel.